



FILED
Feb 28 2025, 10:34 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N   T H E

# Court of Appeals of Indiana

In the Matter of Mar.M., Mad.M., Emo.M., Emm.M.,
(Minor Children), Children in Need of Services,

M.M. (Mother),

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

February 28, 2025

Court of Appeals Case No.
24A-JC-2308

Appeal from the Putnam Circuit Court

The Honorable Melinda Jackman-Hanlin, Magistrate

Trial Court Cause Nos.
67C01-2405-JC-000023
67C01-2405-JC-000024
67C01-2405-JC-000025
67C01-2405-JC-000026

**Felix, Judge.**

## Statement of the Case

M.M. ("Mother") is the mother of four minor children who were alleged to be the victims of educational neglect. A Child in Need of Services ("CHINS") petition was filed for each child. Following a fact-finding hearing, the juvenile court determined the four children were CHINS and ordered Mother to participate in reunification services. Mother appeals and presents two issues, which we revise and restate as the following single issue: Whether the juvenile court clearly erred in adjudicating the children as CHINS.

We affirm.

## Facts and Procedural History

[3]     Mother is the biological mother of Mar.M.,[1] Mad.M.,[2] Emo.M.,[3] and Emm.M.[4] (collectively, "Children").[5]  In January 2024, Mother and Children moved from Ohio to Greencastle, Indiana, and Mother enrolled Children in the Greencastle school system.  On April 12, the Indiana Department of Child Services ("DCS") received a report alleging that Children were the victims of neglect due to missing multiple days of school.  The report alleged that Mar.M, the oldest child, explained the absences by stating, "[Children] went shopping one day, and they missed the other days due [to Mother] staying with a friend in Avon . . . while [Children] were left at home alone."  Appellant's App. Vol. II at 36.

[4]     On April 19, DCS Family Case Manager ("FCM") Megan Michael visited Mother's home to interview Children.  There, Mother did not acknowledge Michael when she arrived and "spent about an hour in the bathroom" while Michael spoke with Children.  Tr. Vol. II at 49.  On April 22, Mother withdrew Children from Greencastle schools and claimed that she was going to homeschool Children.  On May 1, DCS filed petitions alleging Children were CHINS due to Mother's educational neglect.  In late May or early June, FCM

---

[1] Born October 22, 2008.

[2] Born March 25, 2011.

[3] Born July 31, 2012.

[4] Born June 6, 2014.

[5] Mother testified that none of the fathers of Children have been involved in their lives.  The fathers do not participate in this appeal.

Crystal Jeffries contacted Mother via text message, attempting to schedule a time to meet, and Mother told Jeffries that "unless she was ordered she was not going to meet with [Jeffries] or anyone else." Tr. Vol. II at 51.

[5] After a fact-finding hearing on DCS's petition, the juvenile court adjudicated the Children as CHINS, finding in relevant part as follows:

10. The children have been in and out of several different school corporations in Texas, Ohio, and Indiana.

11. There have been periods of time that the children were not enrolled in a school.

12. When Mother enrolled the children into Greencastle schools, the school had a difficult time piecing together the educational history of the children due to all the times the children had been enrolled and withdrawn from school and moved from school to school and from state to state.

13. Mother testified that during the periods of time the children were not enrolled, she was homeschooling the children.

14. Mother testified that she withdrew the children from Greencastle schools and starting homeschooling the children.

15. Ind. Code 20-33-2-20 requires homeschools to maintain an accurate daily record of attendance for the children.

16. Ind. Code 20-33-2-20 also requires that home schooled children are provided 180 days of instruction per school year. The 180 days can include time that the children are enrolled in public schools along with days the children are home schooled.

17. Mother could not provide the attendance records that she kept for any of the children while they were homeschooled.

18. Mother could not provide records of any tests, grades, or homework completed by any of the children while they were homeschooled.

19. Mother did not provide proof that the children received 180 days of instruction during the 2023-2024 school year.

20. [Mar.M] is a high school student. [Mar.M's] former Greencastle Assistant Principal, Yoland Goodpaster, testified that [Mar.M.] does not have any high school credits. [Mar.M] should have between 7 and 14 high school credits.

21. [Mar.M] suffers from low academics and is behind her peers in education. Ms. Goodpaster was concerned with how low [Mar.M's] testing levels were.

Appellant's App. Vol. II at 88.

[6] At the start of the dispositional hearing, Mother's counsel withdrew at Mother's request, and Mother proceeded pro se. In its pre-disposition report, DCS recommended that Children stay with Mother while Mother engaged in family preservation services and home counseling as well as other services. At the hearing, Mother objected to family preservation services, stating: "I've already done most of the work myself without a corrosion [sic] of the State." Tr. Vol. II at 73. Mother also objected to home counseling because Children "are already traumatized from in [sic] other states as caused [by] CPS." *Id.* At the close of

the hearing and after objecting to most of DCS's recommendations, Mother stated,

> I feel like the corrosion [sic] of the DCS strong arming me into this situation is kind of crazy. . .Um, I don't feel like I need to be strong armed into being a parent. This is something that I've been doing for many years and I will continue to do it with or without the State of Indiana . . . Um, I just need to know uh how to file my appeal and where do I need to go when all of this is over with.

*Id.* at 79.

[7] In its dispositional order, the juvenile court ordered Mother to allow FCMs to visit her home, to participate in home counseling, and to complete a parenting assessment. Mother now appeals.

## Discussion and Decision

### The Juvenile Court Did Not Clearly Err in Adjudicating Children as CHINS

[8] Mother challenges the sufficiency of the evidence to sustain the juvenile court's conclusion that Children are CHINS under Indiana Code section 31-34-1-1. Indiana Code section 31-34-1-1 provides that in order to adjudicate a child a CHINS under that section, DCS must prove by a preponderance of the evidence that

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the

child with necessary food, clothing, shelter, medical care, education, or supervision:

>>(A) when the parent, guardian, or custodian is financially able to do so; or

>>(B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and

>(2) the child needs care, treatment, or rehabilitation that:

>>(A) the child is not receiving; and

>>(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1. Although there is "a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010).

We will reverse a CHINS determination only if the juvenile court's decision was clearly erroneous. *In re R.L.*, 144 N.E.3d 686, 689 (Ind. 2020) (citing *In re D.J.*, 68 N.E.3d 574, 578 (Ind. 2017)). "A decision is clearly erroneous if the record facts do not support the findings or if [the juvenile court] applies the wrong legal standard to properly found facts." *Id.* (quoting *D.J.*, 68 N.E.3d at 578). "[W]e neither reweigh the evidence nor judge witness credibility." *Id.*

(citing *D.J.*, 68 N.E.3d at 577–78). When, as here, a trial court enters findings and conclusions sua sponte, we review any issue not covered by the findings "under the general judgment standard," which means we will affirm "on any legal theory supported by the evidence." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016) (citing *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014)). Furthermore, we accept as true any findings that Mother does not challenge on appeal. *See R.M. v. Ind. Dep't of Child Servs.*, 203 N.E.3d 559, 564 (Ind. Ct. App. 2023) (citing *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992)), *trans. not sought*.

[10] First, Mother claims that DCS provided insufficient evidence to show that she failed to provide Children with necessary education. The unchallenged findings show that (1) Children have been in and out of multiple school systems in multiple states, making their educational history difficult to piece together; (2) most recently, Mother withdrew Children from the Greencastle school system and started homeschooling Children; (3) Mother could not provide attendance, grades, nor test scores for Children during the alleged homeschooling; and (4) Mar.M., the oldest child, lacked the school credits for someone her age and was "behind her peers in education." Appellant's App. Vol. II at 88. On appeal, Mother further insists that she was homeschooling Children but does not provide any evidence that she complied with Indiana's statutory requirements for homeschooling. At the fact-finding hearing, Mother described Children's curriculum as "Math, Reading, Language," Tr. Vol. II at 28 and stated that she finds this curriculum online and Children "go at their own pace." Tr. Vol. II at 28. Further, Mother described Mar.M's home schooling as follows:

They have laptops. They are uh, on a site called Khan Academy, K-H-A-N, KHAN Academy. Um, and they can basically like with [Mar.M] seeing how she has a IEP like I tell all the schools she is missing the basics so with that program she can it's completely free. She can start you know where she needs to start which I told her to just start at, at a kindergarten level where if they have preschool on there I told her to start at the earlies [sic] that she can start at and just work her way up.

*Id.* at 30. Mother testified that Children use Khan academy during "regular school hours" on "every day except weekends." *Id* at 31. We are unpersuaded that having Children go at their own pace at a free online school which provides no assessments or daily records of attendance amounts to "supplying education" as contemplated by Indiana Code section 31-34-1-1. Finally, it was within the trial court's purview to disbelieve Mother's testimony regarding this online education.

[11]     Additionally, Mother argues that the State failed to prove educational neglect for the three younger children because the findings specifically referenced only Mar.M's status among her peers. However, the unchallenged findings demonstrate she failed to provide education for all of the Children, and her arguments otherwise are merely requests for us to reweigh the evidence, which we will not do, *see R.L.*, 144 N.E.3d at 689 (citing *D.J.*, 68 N.E.3d at 577–78).

[12]     Second, Mother claims that DCS failed to prove that coercive intervention from the State was necessary. In making this determination, "the question is whether the parents must be coerced into providing or accepting necessary treatment for their child." *In re E.K.*, 83 N.E.3d 1256, 1262 (Ind. Ct. App. 2017) (citing *In re*

*S.D.*, 2 N.E.3d at 1289–90). Throughout the proceedings, Mother demonstrated a continual unwillingness to work with DCS. Mother refused to acknowledge a FCM when she visited her home, and told another that she would not meet unless she was ordered to do so. Further, at the dispositional hearing, Mother objected to the services requested by DCS and stated that she's been able to do most of the work without involvement from the State. Again, Mother wants us to focus on her alleged ability to homeschool Children, which is a request for us to reweigh the evidence which we will not do, *see R.L.*, 144 N.E.3d at 689 (citing *D.J.*, 68 N.E.3d at 577–78). Thus, DCS presented sufficient evidence to show that coercive intervention from the State was necessary. We conclude that the juvenile court did not clearly err in adjudicating Children as CHINS.

[13] Affirmed.

Mathias, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Lisa Diane Manning
Manning Law Office
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana